# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Satina Sheed, | : | |
| Debtor. | : | Bankruptcy No.  17-17464-MDC |

# MEMORANDUM

BY:  MAGDELINE D. COLEMAN, CHIEF UNITED STATES BANKRUPTCY JUDGE

## I.    INTRODUCTION

Before the Court for consideration in the bankruptcy case of Satina Sheed (the "Debtor") is the Debtor's objection (the "Claim Objection")[1] to the amended proof of claim (the "Amended Claim")[2] filed by U.S. Bank National Association ("U.S. Bank") as trustee for the Pennsylvania Housing Finance Agency ("PHFA," and together with U.S. Bank and the Debtor, the "Parties").  The Court held an evidentiary hearing on the Claim Objection on September 20, 2018 and November 19, 2018 (the "Hearing"), and the Parties submitted post-hearing briefs (each a "Post-Hearing Brief") on January 11, 2019.[3]  For the reasons set forth below, the Court will overrule the Claim Objection and allow the Amended Claim in full.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[4]

### A.    The Note and Mortgage

The Debtor owns and resides at 4007 J Street in Philadelphia, Pennsylvania (the "Property"). Stipulation of Facts at ¶1.  On April 25, 2002, the Debtor executed a Note to Wells Fargo Home

---

[1] Bankr. Docket No. 24.

[2] Proof of Claim 3-2.

[3] Bankr. Docket Nos. 49, 50.

[4] The facts cited herein are taken from the *Parties' Stipulation of Facts for Debtor's Objection to Proof of Claim Filed by U.S. Bank* (the "Stipulation of Facts") (Bankr. Docket No. 36), the Parties' testimony at the Hearing, and the exhibits introduced into evidence at the Hearing.

Mortgage, Inc. ("Wells Fargo") for a loan secured by a mortgage on the Property (the "Mortgage").

Stipulation of Facts at ¶2. On the same date, Wells Fargo executed an Assignment of Mortgage,

assigning the Mortgage to PHFA. Debtor's Ex. R. The Mortgage is federally-insured by the Federal

Housing Administration ("FHA") under Title II of the National Housing Act (12 U.S.C. §1715 *et seq.*).

Stipulation of Facts at ¶3. The principal sum listed on the Mortgage is $56,522.00. Stipulation of Facts at

¶4. On August 31, 2007, PHFA executed an Assignment of Mortgage to U.S. Bank as trustee for PHFA.

Stipulation of Facts at ¶5; Debtor's Ex. R.

### B.    The 2007 Foreclosure Action and 2009 Bankruptcy Case

On October 9, 2007, U.S. Bank filed a complaint in mortgage foreclosure (the "2007 Foreclosure

Action") against the Debtor in the Court of Common Pleas of Philadelphia County (the "State Court").

Stipulation of Facts at ¶16. On March 26, 2009, prior to trial, the State Court approved a stipulation (the

"Foreclosure Stipulation") between the Parties in the 2007 Foreclosure Action. Stipulation of Facts at

¶¶17, 19. The Foreclosure Stipulation provided that "in the event the [Debtor] shall file a Petition under

Chapter 13 of the United States Bankruptcy Code, the amount of attorney fees as listed above shall be

limited to the sum of $1,500.00 in any claims filed by [U.S. Bank] in the bankruptcy case." Stipulation of

Facts at ¶18. On March 27, 2009, the State Court entered a consent judgment (the "Consent Judgment")

against the Debtor in the amount of $66,077.65. Debtor's Ex. D at p.10. The Consent Judgment

prohibited U.S. Bank from executing upon the Consent Judgment until on or after April 30, 2009.

Debtor's Ex. D at p.10.

On April 29, 2009, the Debtor filed her first petition in this Court under chapter 13 of the

Bankruptcy Code, 11 U.S.C. §§101 *et seq.* (the "2009 Bankruptcy Case").[5] Stipulation of Facts at ¶20.

On September 27, 2009, U.S. Bank filed a proof of claim in the 2009 Bankruptcy Case asserting the

amount in arrears under the Note was $20,020.20, including $6,930.80 in "legal costs and fees."

Stipulation of Facts at ¶21. On October 4, 2009, U.S. Bank filed an objection to confirmation of the

---

[5] Bankr. Case No. 09-13167.

Debtor's proposed plan, arguing that it understated the amount of U.S. Bank's claim.  Stipulation of Facts

at ¶22.  On November 23, 2009, U.S. Bank filed an amended proof of claim in the 2009 Bankruptcy Case

listing $2,268.30 in legal costs and fees, including $1,500.00 "per consent order attorney fees."

Stipulation of Facts at ¶¶23, 24.  On December 9, 2009, the Debtor filed an amended chapter 13 plan

providing for an arrears claim of $14,756.30 to be paid to U.S. Bank.  Stipulation of Facts at ¶25.  On

January 13, 2010, U.S. Bank filed a praecipe to withdraw its objection to confirmation.  Stipulation of

Facts at ¶26.  On July 1, 2010, however, confirmation of the Debtor's proposed plan was denied and the

Debtor's 2009 Bankruptcy Case was dismissed for the Debtor's failure to make plan payments.

Stipulation of Facts at ¶27.

On August 9, 2010, with the 2009 Bankruptcy Case having been dismissed, U.S. Bank filed a

Praecipe for Writ of Execution in the 2007 Foreclosure Action.  Stipulation of Facts at ¶28.  On March

28, 2011, the Debtor and U.S. Bank entered into a Mortgage Modification Agreement (the "Modification

Agreement").  Stipulation of Facts at ¶29.  The Modification Agreement includes certain provisions that

are relevant to the Parties' arguments with respect to the pending Claim Objection, set forth below:

1. <u>Arrearages</u>.  Mortgagor(s) agrees that she is in default under the terms of said
   Mortgage and Note and that mortgage payment arrearages as of March 25, 2011,
   totaled $5,774.56.

2. <u>Addition to Principal</u>.  Mortgagor(s) and Mortgagee agree that the payment
   arrearages will be added to the outstanding principal balance of the mortgage loan.
   The arrearage payments have been applied to principal and interest, as well as
   adjusting interest so that the new principal balance will not exceed the original loan
   amount of $56,552.00.

* * *

5. <u>No Other Changes</u>.  In all other respects the provisions of the Note and Mortgage
   shall remain unchanged and in full force and effect.

Modification Agreement at ¶¶1, 2, 5.  PHFA sent the Debtor a letter dated April 11, 2011, regarding the

Modification Agreement (the "Modification Cover Letter").  Stipulation of Facts at ¶34.  The letter stated,

in relevant part, that "per [the Debtor's] conversation with Brian Good, PHFA has agreed that the

arrearages, in the amount of $5,774.56 will be added to the outstanding principal balance of [the

Debtor's] mortgage loan.  The arrearage payments have been applied to principal and interest, as well as

adjusting your interest so that the new principal balance will not exceed your original loan amount of

$56,552.00."  Debtor's Ex. K.

On May 17, 2011, after execution of the Modification Agreement, U.S. Bank filed a praecipe in

the State Court to vacate the Consent Judgment in the 2007 Foreclosure Action.  Stipulation of Facts at

¶35.

### C.      The 2016 Mortgage Foreclosure

Nearly four years later, on May 6, 2015, PHFA sent the Debtor a "Notice of Intention to

Foreclose Mortgage."  Stipulation of Facts at ¶36.  On February 2, 2016, U.S. Bank filed a second

complaint in mortgage foreclosure against the Debtor in the State Court (the "2016 Foreclosure Action").

Stipulation of Facts at ¶38.  After a series of conciliation conferences, on December 1, 2016, the State

Court entered default judgment (the "Default Judgment") in favor of U.S. Bank against the Debtor in the

amount of $49,636.23.  Debtor's Exs. F, S.  The assessment of damages U.S. Bank submitted to the State

Court when seeking the Default Judgment were as follows:

| | |
|---|---|
| Principal Balance | $46,553.27 |
| Interest (4/1/15 through 11/23/16) | $   865.59 |
| Late Charges | $   187.91 |
| Escrow Payments Due 11 x $192.87 | $ 2,121.57 |
| Escrow Balance | ($131.41) |
| Suspense | ($400.00) |
| Deferred Late Charges | $   439.30 |
| | $49,636.23 |

Debtor's Ex. S.  Also, on December 1, 2016, the State Court issued a Writ of Execution directing the

Sheriff of Philadelphia County to levy on and sell the Property to satisfy the Default Judgment.  Debtor's

Ex. S.  On November 2, 2017 (the "Petition Date"), after a series of stays of a sheriff sale of the Property,

the Debtor filed the instant bankruptcy case with a sheriff's sale scheduled for November 7, 2017.

Debtor's Ex. F.

4

**D.**      **The Amended Claim, Claim Objection, and the Hearing Thereon**

On March 16, 2018, U.S. Bank filed a proof of claim (the "Original Claim") against the Debtor,

asserting a secured claim in the amount of $70,637.79 for "money loaned," of which $32,215.55 was

asserted to represent the amount necessary to cure the Debtor's default as of the Petition Date.  Debtor's

Ex. B.  Attached to the Original Claim was a Form 410A (the "410A") detailing the calculation of both

the total claim amount and the arrearage as of the Petition Date, as well as the loan payment history.

Debtor's Ex. B.  The 410A set forth the following figures for the total claim:

| | |
|---|---|
| Principal Balance: | $45,927.74 |
| Interest Due: | $ 1,038.71 |
| Fees, costs due: | $20,313.13 |
| Escrow deficiency for funds advanced: | $ 3,608.21 |
| Less total funds on hand: | $    250.00 |
| Total Claim | $70,637.79 |

With respect to the arrearage as of the Petition Date, the 410A set forth the following figures:

| | |
|---|---|
| Principal and interest due: | $ 6,919.64 |
| Prepetition fees due: | $20,313.13 |
| Escrow deficiency for funds advanced: | $ 3,608.21 |
| Projected escrow shortage: | $ 1,624.54 |
| Less funds on hand: | $    250.00 |
| Total prepetition arrearage | $32,215.55 |

On April 10, 2018, the Debtor filed the Claim Objection.  The Claim Objection asserted nine

grounds for the Debtor's objection to the Original Claim, summarized in broad terms as follows:[6]

1. The proof of claim failed to comply with Federal Rule of Bankruptcy Procedure 3001;
2. Escrow charges for real estate taxes and hazard insurance and unspecified corporate advances should be disallowed as not reasonable and not actually incurred;
3. Charges for a projected escrow shortage should be disallowed as not reasonable and not actually incurred;
4. All attorneys' fees and costs should be disallowed as not reasonable and not actually incurred;
5. In the alternative, all attorneys' fees and costs allegedly accrued before the Modification Agreement should be disallowed as inconsistent with the terms of the Modification Agreement;
6. In the alternative, all attorneys' fees and costs should be disallowed for failure to properly service the Mortgage in compliance with FHA requirements;

---

[6] With the exception of certain insignificant stylistic differences, the description of each grounds for objection tracks the summary titles used in the Claim Objection.

7.  In the alternative, all attorneys' fees and costs not permitted by federal regulations should be disallowed;

8.  In the alternative, all attorneys' fees and costs related to the 2016 Foreclosure Action should be disallowed for failure to comply with the notice requirements of Act 6 of 1974;

9.  In the alternative, all attorneys' fees and costs related to the 2007 Foreclosure Action should be disallowed to the extent inconsistent with the Foreclosure Stipulation between the parties.

On June 21, 2018, U.S. Bank filed a response in opposition to the Claim Objection.[7]  On July 25, 2018, U.S. Bank filed the Amended Claim, which asserted the same secured claim amount and arrearage as the Original Claim but also attached the Modification Agreement.

The Court held the Hearing on the Claim Objection on September 20, 2018 and November 19, 2018.  U.S Bank presented the testimony of Kimberley Ayala, Manager of Default Servicing for PHFA.  The Debtor testified on her own behalf.  Various documents were also admitted into evidence.  At the conclusion of the Hearing, the Court allowed the following components of the total claim as set forth in the Amended Claim:

| | |
|---|---|
| Total Principal Balance: | $45,927.74 |
| Total Interest Due: | $ 1,038.71 |
| Escrow deficiency for funds advanced: | $ 3,608.21 |

The Court also allowed the following components of the pre-petition arrearages as set forth in the Amended Claim:

| | |
|---|---|
| Principal and Interest Due: | $6,919.64 |
| Escrow deficiency for funds advanced: | $3,608.21 |
| Projected escrow shortage: | $1,624.54 |

With respect to U.S. Bank's claim for fees and costs as set forth in the Amended Claim, the Court allowed $4,859.83 in costs and $800.00 in attorneys' fees.  The Court took under advisement a determination as to the allowability of the balance of attorneys' fees and costs set forth in the Amended Claim, in the amount of $14,653.30, and allowed the Parties to submit additional briefing in support of their respective positions.

---

[7] Bankr. Docket No. 33.

### III.    DISCUSSION

#### A.    The Burdens of Production and Proof

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is deemed allowed unless a party in interest objects.  11 U.S.C. §502(a).  Rule 3001(c) of the Federal Rules of Bankruptcy Procedure provides that where a claim is based on a writing, a copy of the writing must be filed with the proof of claim.  Fed. R. Bankr. P. 3001(c).  Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules constitutes *prima facie* evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).  In effect, a proof of claim that complies with the rules serves as both a pleading and as trial evidence, even in the face of an objection to the claim.  *Faulkner v. M&T Bank (In re Faulkner)*, 593 B.R. 263, 275 n.4 (Bankr. E.D. Pa. 2018).

The Court of Appeals for the Third Circuit has summarized the parties' respective evidentiary burden in a contested matter involving an objection to a proof of claim:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.  The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim . . . [T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (internal citations omitted); *see also In re Whitfield*, 578 B.R. 273, 277-78 (Bankr. E.D. Pa. 2017) (if the objector satisfies the initial burden of production and overcomes the claimant's *prima facie* case, the ultimate burden of proof rests with the claimant); *In re Sacko*, 394 B.R. 90, 97 (Bankr. E.D. Pa. 2008) (quoting *Allegheny* and collecting caselaw in accord therewith).

Here the lone remaining component of the Amended Claim to be resolved is the balance of the attorneys' fees and costs U.S. Bank has claimed that are not already allowed.  The Amended Claim constitutes *prima facie* evidence of the validity of these fees and costs, and the Debtor was required to produce sufficient evidence to negate their presumed allowability.  Only then would the burden have

shifted back to U.S. Bank to prove the validity of the claimed amounts by a preponderance of the evidence.

**B.      The Debtor's Arguments for Disallowance of Attorneys' Fees and Costs**

The Debtor makes a number of arguments-in-the-alternative in her Post-Hearing Brief regarding why the balance of fees and costs in the Amended Claim should be disallowed.

First, the Debtor argues that all fees, costs, and corporate advances that pre-date the Parties' entry into the Modification Agreement, totaling $11,938.30, should be disallowed as inconsistent with the terms of the Modification Agreement.  Specifically, the Debtor points to paragraphs 1 and 2 of the Modification Agreement.  As noted above, paragraph 1, titled "Arrearages," provides that "Mortgagor(s) agrees that she is in default under the terms of said Mortgage and Note and that *mortgage payment arrearages* as of March 25, 2011 totaled $5,774.56."  (emphasis added).  Paragraph 2, titled "Addition to Principal," provides that "Mortgagor(s) and Mortgagee agree that the *payment arrearages* will be added to the outstanding principal balance of the mortgage loan.  The *arrearage payments* have been applied to principal and interest, as well as adjusting interest so that the new principal balance will not exceed the original loan amount of $56,552.00."  (emphasis added).  The Debtor argues that because the terms "arrearages," "payment arrearages," and "arrearage payments" are not defined in the Modification Agreement, what amounts the Parties intended to be included in paragraph 2 of the agreement is unclear. The Debtor argues that this ambiguity in the Modification Agreement allows the Court to look to extrinsic evidence and the circumstances under which the agreement was made to glean the Parties' intent.  In the Debtor's view, that examination establishes that all amounts the Debtor owed as of the date of the Modification Agreement, and not just principle and interest, were to be wrapped into the new principal balance under the agreement.

Second, the Debtor alternatively argues that even if the Court does not find all amounts the Debtor owed as of the date of the Modification Agreement were included in the agreement, all attorneys' fees and costs related to the 2007 Foreclosure Action should be disallowed to the extent inconsistent with the purported "settlement agreements" between the Parties in the 2007 Foreclosure Action and the 2009

Bankruptcy Case.  The Debtor argues that the Foreclosure Stipulation and the Parties' conduct in the 2009

Bankruptcy Case, and specifically U.S. Bank's amendment of its proof of claim to limit attorneys' fees to

$1,500.00 and the withdrawal of its objection to confirmation, "establish a settlement agreement between

the parties fixing the amount of attorneys' fees and costs related to the 2007 foreclosure."  Debtor's Post-

Hearing Brief at p. 20.  The Debtor argues the dismissal of the 2009 Bankruptcy Case is irrelevant to the

binding nature of this purported settlement agreement.

Finally, the Debtor argues that all attorneys' fees and costs in the Amended Claim should be

disallowed for U.S. Bank's alleged failure to comply with Pennsylvania law and FHA requirements.

Specifically, the Debtor argues that (i) all attorneys' fees and costs related to the 2016 Foreclosure Action

should be disallowed for failure to comply with the notice requirements under Pennsylvania's Act 6 of

1974, 41 P.S. §§101, *et seq.* ("Act 6"), and (ii) all attorneys' fees and costs related to the 2007

Foreclosure Action, the 2009 Bankruptcy Case, and the 2016 Foreclosure Action should be disallowed for

failure to properly service the Debtor's Mortgage in compliance with FHA guidelines.  At the conclusion

of the Hearing, the Court ruled that it was bound by the State Court's entry of Default Judgment in the

2016 Foreclosure Action, and implicit in the entry of that judgment was a finding that U.S. Bank had

complied with applicable laws and regulations and was entitled to judgment.  Likewise, the Consent

Judgment entered in the 2007 Foreclosure Action, though subsequently voluntarily vacated by U.S. Bank

once superseded by the Modification Agreement, represented an implicit finding that U.S. Bank had

complied with applicable laws and regulations and was entitled to judgment.  In its Post-Hearing Brief,

however, the Debtor argues that neither the principle of *res judicata* nor the Rooker-Feldman doctrine

prevent this Court from evaluating the attorneys' fees and costs sought for the 2007 Foreclosure Action,

the 2009 Bankruptcy Case, or the 2016 Foreclosure Action.

    **C.**    **Analysis of the Debtor's Arguments**

        **1.**    **The Debtor Did Not Establish the Parties' Mutual Intent to Include All
Amounts the Debtor Owed in the Modification Agreement.**

The Court first addresses the Debtor's argument that the Modification Agreement is ambiguous but extrinsic evidence establishes the Parties' intent to have all amounts the Debtor owed PHFA as of the date of the agreement, including attorneys' fees and costs, added to the new principal amount.

Under Pennsylvania law,[8] "the paramount goal of contract interpretation is to determine the intent of the parties." *TH Properties v. Montgomery, McCracken, Walker & Rhoads, LLP (In re TH Properties)*, 752 Fed. Appx. 127, 130 (3d Cir. 2018); *Whiteley v. Hildebrand (In re Mechanicsburg Fitness, Inc.)*, 2019 Bankr. LEXIS 1463, at *8 (May 10, 2019) (*citing American Eagle Outfitters v. Lyle & Scott Ltd*., 584 F.3d 575, 587 (3d Cir. 2009)). When the words of a contract are clear and unambiguous, the intent of the parties must be determined from the express language of the agreement, and where the intention is clear there is no need to resort to extrinsic aids or evidence. *TH Properties*, 752 Fed. Appx. at 130; *Whiteley*, 2019 Bankr. LEXIS 1463, at *9 (*citing Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). A contract is ambiguous if it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one. *TH Properties*, 752 Fed. Appx. at 130. To determine whether ambiguity exists in a contract, the court may consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of the meaning. *Id.*

The Court agrees with the Debtor that the language of the Modification Agreement is ambiguous as to what amounts the Parties intended to be included under paragraph 2's modification of the principal balance the Debtor owed. In paragraph 1, titled "Arrearages," the Modification Agreement provides that "the mortgage payment arrearages" as of March 25, 2011, totaled $5,774.56. Paragraph 2 provides that the Parties agreed that the "payment arrearages" would be added to the outstanding principal balance of the mortgage loan, and that the "arrearage payments" have been applied to principal and interest, as well

---

[8] The Modification Agreement does not contain any provision regarding what jurisdiction's law governs it, but it does provide that, other than the modifications to the Mortgage addressed therein, "[i]n all other respects the provisions of the Note and Mortgage shall remain unchanged and in full force and effect." Modification Agreement at ¶5. The Mortgage provides that it is governed "by Federal law and the law of the jurisdiction in which the Property is located." Mortgage at ¶14. As noted above, the Property is located in Pennsylvania.

as adjusting interest so that the new principal balance would not exceed the original loan amount of

$56,552.00.  As the Debtor notes in her Post-Hearing Brief, the Modification Agreement does not define

the terms "arrearages," "mortgage payment arrearages," "payment arrearages," or "arrearage payments."

The use of four different but similar terms, each undefined, within the span of two short paragraphs of the

Modification Agreement renders it unclear whether the Parties intended the terms to mean the same thing

or something different, and what that meaning or meanings were.  As such, the Court finds the

Modification Agreement is reasonably susceptible to differing constructions regarding whether the Parties

intended that "arrearage payments" as used in paragraph 2 of the Modification Agreement included all

amounts the Debtor owed as of the date of the agreement, or alternatively included only principal and

interest, and escrow.  The Court therefore will look beyond the four corners of the Modification

Agreement to glean the Parties' intent.

At the Hearing, Ms. Ayala testified regarding PHFA's understanding of the Modification

Agreement.  Ms. Ayala testified that the term "mortgage payment arrearages" meant principal, interest,

taxes, and insurance.[9]  She further testified that it did not include costs and fees.[10]  Therefore it is PHFA's

position that the "arrearage payments" that were applied to principal and interest under paragraph 2 of the

Modification Agreement were only overdue principal, interest, and escrow, not costs and fees PHFA

incurred in connection with the Note and Mortgage.[11]  Ms. Ayala testified that in her review of PHFA's

loan to the Debtor, PHFA did not agree to waive costs and fees, and PHFA continued to account for those

costs and fees internally after the Parties entered into the Modification Agreement.[12]  Ms. Ayala further

testified that the amount of $5,774.56 set forth in paragraph 1 of the Modification Agreement as the

"mortgage payment arrearages" could not possibly have included the costs and fees associated with the

---

[9] 9/20/18 Hearing Recording at 6:12.

[10] *Id.*

[11] *Id.* at 6:13.

[12] *Id.* at 6:14.

2007 Foreclosure Action and the 2009 Bankruptcy Case, which as of the date of the Modification

Agreement totaled over $10,000.00.[13]

The Debtor also testified regarding her understanding of the Modification Agreement.  The

Debtor testified that she understood the Modification Agreement to provide that "whatever moneys that

[she] owed at that time would be set to the back of the mortgage and [she] would be current for

everything … [W]hatever payments that [she] was behind, that certain fees they were saying, or that

money that they were saying [she] owed them, [she] thought they [were] going to be inserted into the loan

modification."[14]  She further testified that her understanding of the term "arrearage payments" in

paragraph 2 of the Modification Agreement was that "whatever money [she] owed would be … added to

the mortgage."[15]  The Debtor did not believe any amounts were excluded from arrearage payments.[16]  The

Debtor testified that her understanding was based on a phone conversation she had with Brian Good from

PHFA[17] prior to entering into the Modification Agreement, during which Mr. Good explained that a loan

modification was "whatever moneys that [she] owed to the mortgage company at that time would go into

the back of the mortgage and [she] would have to pay it back … with the modification and [she] would be

current."[18]  The Debtor testified that Mr. Good did not state there were amounts she owed to PHFA that

would be excluded from the Modification Agreement, and at no other time did PHFA advise her that there

would be amounts not included.[19]  The Debtor also introduced into evidence the Modification Cover

Letter, which referenced the Debtor's conversation with Mr. Good, stating that "Per your conversation

with Brian Good, PHFA has agreed that the arrearages, in the amount of $5,774.56 will be added to the

outstanding principal balance of your mortgage loan."  Debtor's Ex. K.

---

[13] *Id.* at 6:15.

[14] 11/19/18 Hearing Recording at 11:21 to 11:22.

[15] *Id.* at 11:22.

[16] *Id.* at 11:22 to 11:23.

[17] Neither party testified as to Mr. Good's position with PHFA.

[18] *Id.* at 11:23 to 11:24.

[19] *Id.* at 11:24 to 11:25.

The Debtor's testimony does not persuade the Court that the Parties intended all amounts the Debtor owed PHFA as of the date of the Modification Agreement to be applied to the new principal balance. Without determining whether the Debtor reasonably believed that was the intention of the Parties, her unexpressed subjective belief as to the meaning of an ambiguous contractual term does not bind PHFA to that construction. *Bevan & Associates, LPA, Inc. v. Bogdan (In re Johns-Manville Corp.)*, 2017 U.S. Dist. LEXIS 164219, at *21 (S.D.N.Y. Sept. 29, 2017). A party's subjective understanding of an ambiguity in a contract is irrelevant to the Court's determination of the mutual intent of the parties. *See Nycal Corp. v. Inoco P.L.C.*, 988 F. Supp. 296, 302 (S.D.N.Y. 1996) (testimony reflecting subjective intent or understanding only is not properly considered in construing ambiguous language in an agreement). The Debtor's testimony regarding her conversation with Mr. Good does not lead the Court to conclude otherwise. First, the Court was not presented with any evidence as to Mr. Good's position with and authority to bind PHFA. More importantly, however, the Court finds that the Debtor's testimony and the Modification Cover Letter do not establish that PHFA, through Mr. Good's authority or otherwise, intended all amounts the Debtor owed to be encapsulated in the term "arrearages" as used in the Modification Agreement. If anything, given that the Modification Cover Letter identifies the amount of arrearages as $5,774.56, whereas PHFA's attorneys' fees and costs alone as of that date approximated $10,000.00, it supports the conclusion that PHFA intended only principal, interest, and escrow to be included. The Debtor did not testify that Mr. Good advised her that costs and fees would be included in the amounts wrapped into the new principal, and she did not testify that she expressed to Mr. Good her belief that they would. While the Debtor did testify that Mr. Good did not advise her that any amounts would be *excluded* from the Modification Agreement, any such omission does not bind PHFA to the Debtor's own interpretation that the agreement included all amounts.

The Debtor having failed to establish that her conversation with Mr. Good evidences the Parties' mutual intent to have all amounts the Debtor owed included in the Modification Agreement, the Court finds that other evidence indicates the contrary. Paragraph 1 of the Modification Agreement as well as PHFA's records regarding the Debtor's loan transaction and payment history evidence that PHFA did not

intend to treat costs and fees incurred the same as overdue principal and interest.  Paragraph 1 of the

Modification Agreement provided that the mortgage payment arrearages as of March 25, 2011, were

$5,774.56.  As noted above, Ms. Ayala testified that PHFA's costs and fees alone in connection with the

2007 Foreclosure Action and 2009 Bankruptcy Case exceeded $10,000.00.  The Debtor offered no

explanation why PHFA would agree to an arrearage figure in one paragraph of the Modification

Agreement of approximately $6,000.00, and in the very next paragraph agree to a figure nearly three

times that much as the arrearage that would be wrapped into the new outstanding principal balance.  Had

this been the case, it is not clear to the Court what the purpose of stating the arrearage figure of $5,774.56

in paragraph 1 even would have been.  The Court finds this logical inconsistency, while not decisive,

weighs in favor of PHFA's construction of the agreement that the amount being wrapped into the post-

modification balance was only overdue principal, interest, taxes, and insurance.  *Cf. PC Helps Support v.

Dean Witter Reynolds, Inc.*, 2003 U.S. Dist. LEXIS 6825, at *9 (E.D. Pa. Mar. 19, 2003) (determining

whether an ambiguity even exists must be considered in the context of the agreement as a whole, and if

the apparent ambiguity of one provision of a contract is resolved by another provision of the contract, no

ambiguity exists).  Because PHFA treated principal, interest, and escrowed amounts differently than costs

and fees, the Court finds that to the extent Mr. Good did tell the Debtor that "whatever money" she owed

would be wrapped into the mortgage, he intended that to mean overdue principal, interest, and escrow

amounts, but not costs and fees.

The Court finds that PHFA's transaction history for the loan to the Debtor also weighs in favor of

a finding that costs and fees were not included in the Modification Agreement.  The transaction history

reflects that payments from the Debtor were applied to principal, interest, and escrow, with a

corresponding reduction in the outstanding principal balance.  Debtor's Ex. M.  By contrast, however,

charges to the account for attorneys' fees and costs PHFA incurred, including in connection with the 2007

Foreclosure Action and the 2009 Bankruptcy Case, were not added to outstanding principal.  It is

therefore clear that PHFA treated principal, interest, and escrow differently than attorneys' fees, costs,

and other charges.  This lends credibility to PHFA's position that only principal, interest, and the normal

escrow charges of taxes and insurance were contemplated by the term "arrearage payments" in paragraph 2, particularly when viewed in light of the stated amount of arrearages in paragraph 1, which clearly did not include attorneys' fees and costs PHFA had incurred.

> **2.    The Consensual Resolution of U.S. Bank's Proof of Claim and Plan Objection in the Dismissed 2009 Bankruptcy Case is Irrelevant to Resolution of U.S. Bank's Claim in the Present Bankruptcy Case.**

The Debtor argues in her Post-Trial Brief that two prior "settlement agreements" between the Parties indicate an intent to limit PHFA's claim for attorneys' fees and costs. The Debtor points first to the settlement the Parties reached in the 2007 Foreclosure Action, where U.S. Bank agreed, pursuant to the Foreclosure Stipulation, to limit its claim for attorneys' fees in a future chapter 13 filing by the Debtor to $1,500.00. The Foreclosure Stipulation provided that "in the event the [Debtor] shall file a Petition under Chapter 13 of the United States Bankruptcy Code, the amount of attorney fees as listed above shall be limited to the sum of $1,500.00 in any claims filed by Plaintiff in the bankruptcy case." Debtor's Ex. D, Foreclosure Stipulation. The Debtor also points to the subsequent resolution of U.S. Bank's claim and plan objection in the Debtor's 2009 Bankruptcy Case, which included a cap on U.S. Bank's attorneys' fees claim consistent with the Foreclosure Stipulation and Consent Judgment in the 2007 Foreclosure Action.

The Court finds that the Foreclosure Stipulation and Consent Judgment in the 2007 Foreclosure Action and the consensual resolutions reached in the 2009 Bankruptcy Case are irrelevant for purposes of the amount of attorneys' fees and costs U.S. Bank can claim in the present case. The Modification Agreement, entered into *after* both the 2007 Foreclosure Action and the 2009 Bankruptcy Case, constituted a compromise of the Parties' positions as of that time. At the time the Modification Agreement was entered into in 2011, the 2009 Bankruptcy Case had been dismissed and the Debtor was again facing foreclosure on the Property by U.S. Bank. U.S. Bank agreed to roll overdue principal, interest, and escrow amounts into a new principal balance that would not exceed the original amount of the Debtor's loan, and thereafter filed a praecipe to vacate the Consent Judgment. Once that judgment was vacated, the limit on the amount of attorneys' fees U.S. Bank could seek in a chapter 13 bankruptcy

filing was vitiated.  The Modification Agreement, not the Consent Judgment, became the operative agreement to determine the Parties' rights, and as discussed above, that agreement did not include a cap on attorneys' fees and costs.

### 3. Application of *Res Judicata* Precludes the Court from Adjudicating U.S. Bank's Compliance with Act 6 and FHA Servicing Guidelines.

As noted above, at the conclusion of the Hearing, the Court ruled that it was bound by the State Court's entry of Default Judgment in the 2016 Foreclosure Action and the Consent Judgment entered in the 2007 Foreclosure Action, each of which represented an implicit finding that U.S. Bank had complied with applicable laws and regulations related to the Mortgage and was entitled to judgment.  In her Post-Hearing Brief, however, the Debtor argues that neither the principle of *res judicata* nor the Rooker-Feldman doctrine preclude this Court from determining that U.S. Bank is not entitled to attorneys' fees and costs due to its alleged failure to comply with Act 6 and FHA servicing guidelines prior to instituting its 2007 and 2016 foreclosure actions.  The Court finds it unnecessary to address the Debtor's Rooker-Feldman argument, because the principle of *res judicata* precludes the Court from adjudicating whether U.S. Bank complied with Act 6 and FHA servicing guidelines.

Where the decision argued to preclude a later action was issued by a state court, federal courts apply the *res judicata* principles developed by that state.  *Moore v. Coldwell Banker Mortg. (In re Moore)*, 436 B.R. 754, 759 (Bankr. E.D. Pa. 2010).  The doctrine of *res judicata* bars any future suit between the same parties litigating on the same claim or any other claim arising from the same transaction or series of transactions that was or could have been raised in the first action.  *Gagliardi v. Chi. Title Ins. Co. (In re Gagliardi)*, 2002 Bankr. LEXIS 1260, at *4-*5 (Bankr. E.D. Pa. Oct. 22, 2002).  Under Pennsylvania law, for *res judicata* to apply, four elements must be present: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons and parties or their privies to the action; and (4) identity of the capacity or the parties suing or sued.  *Moore*, 436 B.R. at 759 (*citing Yamulla Trucking & Excavating Co., Inc. v. Justofin*, 771 A.2d 782, 784 (Pa. Super. 2001)). Pennsylvania takes a broad view of what constitutes a "final judgment" for purposes of *res judicata*.

*General Accident Fire & Life Assurance Corp. v. Flamini*, 445 A.2d 770, 772 (Pa Super. 1982). The rule in Pennsylvania is that a default judgment is a valid and final adjudication on the merits and therefore has *res judicata* effect barring future litigation. *Moore*, 436 B.R. at 759 n.26 (*citing Easley v. New Century Mortgage Corp.*, 2009 U.S. Dist. LEXIS 65462, at *2 n.6 (E.D. Pa. July 28, 2009)); *Wexler v. Citibank*, 1994 U.S. Dist. LEXIS 14992, at *15-*16 (E.D. Pa. 1994). Importantly, *res judicata* encompasses not only issues actually argued, but also issues that could have been argued. *James E. McFadden, Inc. v. Bechtel Power Corp.*, 1986 U.S. Dist LEXIS 27250, at *12 n.8 (E.D. Pa. Apr. 3, 1986) (*citing Flamini*, 445 A.2d at 772 (Pa Super. 1982)).

The Court first addresses application of *res judicata* to the 2007 Foreclosure Action. As discussed above, on October 9, 2007, U.S. Bank instituted the 2007 Foreclosure Action in the State Court. On March 26, 2009, prior to trial, the State Court approved the Foreclosure Stipulation between the Parties. On March 27, 2009, the State Court entered the Consent Judgment against the Debtor in the 2007 Foreclosure Action in the amount of $66,077.65. The Consent Judgment in favor of U.S. Bank triggers the application of *res judicata* because it was a final judgment in the 2007 Foreclosure Action. Under Pennsylvania law, *res judicata* bars the Debtor from making claims before this Court that were *or could have been* argued in the State Court. The Debtor's argument in her Claim Objection that the 2007 Foreclosure Action was not preceded by proper notice under Act 6 or compliance with applicable FHA servicing guidelines is an argument that could have been made in the 2007 Foreclosure Action. The Parties did not present evidence as to whether the Debtor did or did not press that argument in the 2007 Foreclosure Action, but regardless of whether she did or not, the entry of the Consent Judgment against the Debtor precludes her from pressing that argument here.

This conclusion is not altered by the fact that the Parties entered into the Modification Agreement in 2011 and thereafter U.S. Bank filed a praecipe to vacate the Consent Judgment. The Consent Judgment did not lose its preclusive effect simply because the Parties later settled the action. The Court finds persuasive the reasoning of the court in *Costello v. Enright (In re Costello)*, 2004 Bankr. LEXIS 2726 (Bankr. D. Vt. Nov. 2, 2004). In that case, a mortgagor initiated a pre-petition foreclosure action against

the debtors in state court.  The state court entered judgment against the debtors.  The mortgagor and the

debtors then entered into a forbearance agreement with respect to the note and the mortgage, and the

mortgagor filed a motion to have the judgment vacated.  The debtors subsequently filed a chapter 11

bankruptcy and initiated an adversary complaint against the mortgagor for a determination that the note

and mortgage were void under Vermont law.  The bankruptcy court found the debtors' claims were barred

by *res judicata* because they related to the validity of the note and mortgage, and therefore were

compulsory counterclaims in the state foreclosure action that the debtors failed to assert.  The *Costello*

court found that the preclusive effect of the foreclosure judgment was not vitiated by the subsequent

settlement and the vacating of that order:

> [T]he judgment was voluntarily set aside by the parties, in accordance with an agreement
> by the parties to the action.  The parties apparently determined that since they had
> reached a settlement it was preferable to reinstate the mortgage rather than enforce the
> judgment.  This is a business decision that in no way diminishes the accuracy or
> significance of the legal conclusions reached in the Foreclosure Action Judgment.  Where
> a court has issued a judgment order that has not been timely appealed, the order retains its
> preclusive effect despite a later settlement by the parties.

*Id.* at *10.  The Court finds the same holds true here.  The Parties entered into the Modification

Agreement as a business decision rather than U.S. Bank enforcing the Consent Judgment.  That Consent

Judgment, however, retained its preclusive effect notwithstanding it being vacated.  The Debtor could

have argued the invalidity of the foreclosure action before the State Court, and the Consent Judgment

precludes that argument from being pressed here.  The Debtor's extension of that argument to assert that

any resulting attorneys' fees and costs are inappropriate stems from the same "transaction" as the one at

issue before the State Court – the foreclosure – and therefore is also barred under Pennsylvania's *res*

*judicata* principles.

Turning to the 2016 Foreclosure Action, *res judicata* applies to it as well.  The State Court

entered the Default Judgment against the Debtor.  The Debtor argues that *res judicata* does not apply

because there is no identity of "the thing sued for" or "the cause of action."  Debtor's Post-Hearing Brief

at 27.  The Debtor draws a distinction between the state foreclosure action and her present objection to

U.S. Bank's claim for attorneys' fees and costs by arguing that the former is strictly an *in rem* proceeding,

whereas the latter is an action to determine the amount necessary to cure her mortgage arrears under her proposed plan.  *Id.* at 27-28.  According to the Debtor, she could not have raised her arguments that the fees and costs U.S. Bank claims are improper in the state foreclosure proceedings because U.S. Bank never sought these amounts in the State Court, and therefore this is an entirely distinct cause of action or proceeding.  *Id.* at 29.

The Court believes the Debtor's distinction is off-base because it takes an inappropriately narrow view of what was at issue in the 2016 Foreclosure Action and its relation to the Debtor's present arguments.  The Debtor argues here that (i) U.S. Bank failed to comply with the notice requirements under §403 of Act 6 prior to instituting the 2016 Foreclosure Action, which under §406 of Act 6 is a precondition to collecting attorneys' fees, and (ii) U.S. Bank failed to properly service the Mortgage in compliance with FHA guidelines, which is a precondition to accelerating the debt and foreclosing. Debtor's Post-Hearing Brief at 25-26.  The Debtor argues that these failures render all amounts U.S. Bank seeks in connection with the 2007 Foreclosure Action, the 2009 Bankruptcy Case, and the 2016 Foreclosure Action not legally due and unnecessarily incurred.  Debtor's Post-Hearing Brief at 25-26.  At the core of both of these arguments, however, is the assertion of a defense to the state foreclosure action; *i.e.*, the Debtor claims that U.S. Bank failed to comply with Act 6 and FHA servicing guidelines as required in order to institute foreclosure proceedings against the Debtor.  These are arguments that, notwithstanding the entry of the Default Judgment, *could have been made* before the State Court because they arise from the same transaction as the one that was before the State Court, *i.e.,* U.S. Bank's foreclosure on the Property.  Under Pennsylvania law, these arguments are barred by application of *res judicata*.

The Court is not convinced by the Debtor's argument that the Claim Objection presents a different cause of action than what was at issue in the State Court because U.S. Bank did not seek attorneys' fees and costs in the 2016 Foreclosure Action, and therefore the Debtor could not have raised her current arguments there.  With respect to the Debtor's argument that under §406(3) of Act 6, U.S. Bank cannot collect fees without first having provided the notice required under §403, the Court observes

that compliance with §403 is a precondition to instituting foreclosure proceedings in the first place.[20]  The Debtor therefore *could have* argued before the State Court that the 2016 Foreclosure Action was improper under Act 6, and the Debtor's present argument that because the foreclosure was improper the attorneys' fees incurred in connection with it are not authorized is a "claim arising from the same transaction or series of transactions that was or could have been raised in the first action." *See Gagliardi*, 2002 Bankr. LEXIS 1260, at *4-*5.  Likewise, the Debtor's argument that U.S. Bank was precluded from initiating the 2007 and 2016 foreclosures because it did not comply with FHA servicing guidelines is a defense that *could have been* argued before the State Court.  The Debtor's extension of that defense to argue that any resulting attorneys' fees and costs are improper is a claim arising from the same transaction that was the subject of the State Court action and is subject to *res judicata. See Buckskin Realty, Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty, Inc.)*, 2016 Bankr. LEXIS 3458 (Bankr. E.D.N.Y. Sept 23, 2016) (under New York's "transactional" approach to *res judicata*, the debtor's claims related to alleged procedural defects in a state court foreclosure action that ended in default judgment against the debtor arose out of the same transaction – the foreclosure – and therefore could have been litigated in the state court).

The Debtor claims that U.S. Bank did not comply with Act 6 and FHA servicing guidelines, rendering all attorneys' fees and costs in the 2007 Foreclosure Action, the 2009 Bankruptcy Case, and the 2016 Foreclosure Action improper, are barred by *res judicata* because they could have been pressed in the State Court.  The Court therefore will not consider them in connection with the Claim Objection.

## IV.    CONCLUSION

The Court finds that the Debtor has not carried her burden in challenging the *prima facie* allowability of the attorneys' fees and costs set forth in the Amended Claim that the Court has not already

---

[20] Section 403(a) of Act 6 provides that "Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section."  41 P.S. §403(a).

allowed, in the amount of $14,653.30.  The Court therefore overrules the Claim Objection and will allow

U.S. Bank's Amended Claim in full.  An Order consistent with this Memorandum will be entered.

Dated:  October 3, 2019

MAGDELINE D. COLEMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE

Jonathan Sgro, Esquire
Community Legal Services, Inc.
1410 W. Erie Avenue
Philadelphia, PA 19140

Kevin G. McDonald, Esquire
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532

William C. Miller, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912